UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                          :

JOSUE PEGUERO MANZANILLO,            :

                                   :

                Petitioner,        :

                                   :         26-CV-01715 (JAV)

       -v-                    :

                                   :        <u>OPINION AND ORDER</u>

PAUL ARTETA, et al.,               :

                                   :

                Respondents.    :

                                   :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On March 2, 2026, Petitioner Josue Peguero Manzanillo ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 against Sheriff of Orange County and Director of the Orange County Correctional Facility Paul Arteta, Field Office Director for Immigration Customs Enforcement's ("ICE") New York Field Office Kenneth Genalo, U.S. Secretary of Homeland Security Kristi Noem, and U.S. Attorney General Pamela Bondi in their official capacities (the "Government" or "Respondents").  ECF No. 1 ("Pet." or "Petition"), ¶¶ 1, 7-11.  Petitioner alleges that his prolonged detention by ICE unlawfully violates his Fifth Amendment right to due process.  *Id.*, ¶¶ 5, 30.  For the following reasons, the Petition is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Petitioner was born in Santo Domingo, Dominican Republic in 1999.  ECF No. 1-1 ("Koenig Decl."), ¶ 3.  His maternal grandfather is a citizen of the United States and petitioned for Petitioner and his mother to join him in the United States.

*Id.* Mr. Peguero and his mother obtained lawful permanent resident ("LPR") status and entered the United States on October 26, 2010, when Petitioner was 11 years old. *Id.* He and his family have resided continuously in the United States since that time.

Petitioner has a single prior arrest. *Id.*, ¶ 9. He was arrested in Harrisburg, Pennsylvania, and charged with violating 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1708 (mail theft), and 18 U.S.C. § 1028A (aggravated identity theft) in the District Court for the Middle District of Pennsylvania. *Id.* He ultimately pleaded guilty to aggravated identity theft and was sentenced to two years imprisonment on January 12, 2022. *Id.* He completed his sentence in 2024. *Id.*

On April 14, 2025, Petitioner flew to the Dominican Republic for a vacation with a friend and his family. *Id.*, ¶ 11. This was the first time that Petitioner had returned to the Dominican Republic since he left in 2010. *Id.* He spent two weeks there. *Id.*

On April 27, 2025, Petitioner flew back to the United States and was detained at the John F. Kennedy International Airport in New York by Customs and Border Protection ("CBP"). *Id.*, ¶ 12. The Department of Homeland Security ("DHS") brought him to the Orange County Jail in Goshen, New York, where he has remained since. *Id.*

DHS issued a Notice to Appear ("NTA") dated April 28, 2025, in which they charged Petitioner as inadmissible pursuant to Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") as someone who had been convicted of

a crime involving moral turpitude ("CIMT").  *Id.*, ¶ 13.  On June 11, 2025, the Immigration Judge found the charge of removability was sustained.  *Id.*, ¶ 18.

On June 22, 2025, Petitioner filed a 42A application for cancellation of removal for LPRs, arguing that he was eligible to apply for cancellation of removal because his aggravated identify theft conviction did not constitute an aggravated felony.  *Id.*, ¶ 19.  On July 9, 2025, the Immigration Judge found that Petitioner's aggravated identify theft conviction was an aggravated felony under INA § 101(a)(43)(M) and that he was barred from applying for cancellation of removal.  *Id.*, ¶ 21; ECF No. 1-4 ("IJ Order") at 4.  Since Petitioner was not eligible for other relief, the Immigration Judge entered an order for Petitioner to be removed to the Dominican Republic.  Koenig Decl., ¶ 21; IJ Order at 4.  Petitioner orally reserved appeal.  Koenig Decl., ¶ 21.

On August 20, 2025, Petitioner filed a Notice of Appeal of the Immigration Judge's decision with the Board of Immigration Appeals ("BIA").  *Id.*, ¶ 24.  That appeal is still pending.  *Id.*, ¶ 29.

Separately, Petitioner has also obtained pro bono counsel to pursue post-conviction relief concerning his aggravated identify theft conviction based on ineffective assistance of counsel.  *Id.*, ¶¶ 22-23, 33.  To the Court's knowledge, however, Petitioner has not yet filed a petition requesting such relief.  *See id.*, ¶ 33.

On March 2, 2026, Petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2241.  Petitioner argues that his detention has become unreasonably prolonged in violation of his Fifth Amendment right to due process.

Pet., ¶ 30.  Accordingly, Petitioner seeks release from detention or, alternatively, an individualized bond hearing at which the Government bears the burden to justify Petitioner's detention by clear and convincing evidence.  *Id.*, ¶ 5.

On March 13, 2026, the Government filed its opposition to the Petition, arguing that Petitioner's detention is lawful and mandatory pursuant to either 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(c)(1)(A).  ECF No. 11 ("Opp'n") at 1-2.  The Government also argues that Petitioner is not entitled to receive a bond hearing. *Id.* at 7-16.

As of late March 2026, Petitioner has been detained for 11 months.  In that time, he has not received a bond hearing.  *See* Koenig Decl., ¶ 30.

## LEGAL STANDARDS

Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

## DISCUSSION

The parties agree that Petitioner, who is an LPR, is detained pursuant to

4

Section 1225(b)(2)(A).[1]  Pet., ¶¶ 1, 28, 30;  Opp'n at 4.  The parties, however,

disagree as to the scope of due process to which Petitioner is entitled.  Petitioner

contends that, under the *Mathews* test, he is at least entitled to an individualized

bond hearing, at which the Government would bear the burden of proof to justify his

continued detention by clear and convincing evidence that he is a danger to the

community or a flight risk.  Pet., ¶¶ 5, 40-60.  The Government counters that

Petitioner is entitled only to the procedures set forth by Congress, which do not

include bond hearings for individuals detained under Section 1225(b), and that he is

subject to mandatory detention during the pendency of his removal proceedings.

*See* Opp'n at 7-13.  The Government also argues that, even under the *Mathews* test,

Petitioner is not entitled to a bond hearing.  *See id.* at 13-16.  Accordingly, the

primary issue this case raises is whether an LPR subject to mandatory detention

under Section 1225(b)(2)(A) has a constitutional due process right to a bond hearing

when his detention becomes unreasonably prolonged.  On these facts, the Court

concludes Petitioner has such a right.

 The Supreme Court has recognized that LPRs are "[people] within the

---

[1] "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)."  *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).  "Ordinarily, an LPR who reenters the country is not considered an alien seeking admission and, therefore, cannot be detained pursuant to Section 1225(b)."  *Brissett v. Decker*, 324 F. Supp. 3d 444, 449 (S.D.N.Y. 2018).  However, "an LPR may be considered an arriving alien and detained pursuant to Section 1225(b) if the alien 'has committed an offense identified in [8 U.S.C. § 1182(a)(2)].'"  *Id.* (quoting 8 U.S.C. § 1101(a)(13)(C)(v)).  Here, the Immigration Judge found that Petitioner committed such an offense, *see* IJ Order at 1, thereby subjecting him to detention under Section 1225(b) when he returned to the United States from his vacation abroad.

protection of the Fifth Amendment." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953). Indeed, "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien." *Landon v. Plasencia*, 459 U.S. 21, 31 (1982); *see also Rosenberg v. Fleuti*, 374 U.S. 449, 460 (1963) ("the returning resident alien is entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him, . . . which supports the general proposition that a resident alien who leaves this country is to be regarded as retaining certain basic rights"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213, (1953) ("a lawful resident alien may not captiously be deprived of his constitutional rights to procedural due process"). Accordingly, the Court concludes that Petitioner retains his constitutional due process rights as an LPR despite his two-week vacation abroad. *E.g.*, *Brissett*, 324 F. Supp. 3d at 451.

The Government points to *Mezei* in support of its argument that, despite Petitioner's status as an LPR, his two-week vacation in the Dominican Republic renders him "an alien on the threshold of initial entry," thus abrogating the constitutional due process rights he would otherwise be entitled to as an LPR. *See* Opp'n at 8-9 (quoting *Mezei*, 345 U.S. at 212). *Mezei* is distinguishable from the instant case.

In *Mezei*, the habeas petitioner was born outside the United States but had lived in the United States from 1923 to 1948. 345 U.S. at 208. In May of 1948, he left the country and spent 19 months in various countries behind the then-so-called Iron Curtain. *Id.* at 214. He attempted to return to the United States in February

6

of 1950, but upon arrival, he was temporarily excluded from the United States by an immigration inspector acting pursuant to the Passport Act. *Id.* at 208. The U.S. Attorney General thereafter ordered that he be permanently excluded from the United States without a hearing because his entry would be prejudicial to the public interest for security reasons. *Id.* All attempts to facilitate his departure failed, as no other country accepted him. *Id.* at 208-09. Mezei thus remained detained on Ellis Island and, asserting unlawful confinement, "he sought relief through a series of habeas corpus proceedings." *Id.* at 209.

The issue before the Supreme Court was "whether the Attorney General's continued exclusion of [Mezei] without a hearing amounts to an unlawful detention, so that courts may admit him temporarily to the United States on bond until arrangements are made for his departure abroad." *Id.* at 207. The Supreme Court concluded that his "protracted absence" from the United States constituted "a clear break in [his] continuous residence [in the United States]." *Id.* at 214. The Supreme Court therefore found that Mezei was "an entrant alien or assimilated to that status for constitutional purposes." *Id.* (cleaned up). Because Mezei lacked the constitutional rights to due process possessed by a lawful resident alien, the Supreme Court held that "[his] continued exclusion [does not] deprive[] him of any statutory or constitutional right." *Id.* at 215; *see id.* at 213-216.

Here, Petitioner has neither been deemed a national security threat nor does his brief vacation abroad constitute a "protracted absence." Petitioner was absent from the country for a mere two weeks. Moreover, the Second Circuit has held that

a two-month absence alone does not extinguish an alien's LPR status or the constitutional due process protections that accompany it. *See Ali v. Reno*, 22 F.3d 442, 446, 448-49 (2d Cir. 1994) (holding that an LPR returning from two months abroad and alleged to have been convicted of a CIMT was entitled to due process). Accordingly, Petitioner, as an LPR, is entitled to constitutional due process protections.[2]

Furthermore, the Second Circuit has recognized that due process challenges to prolonged detention under Sections 1226(a) and 1226(c) should be reviewed under the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024) (applying *Mathews* test to due process challenges of LPRs detained under Section 1226(c)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews* test to due process challenge of noncitizen detained under Section 1226(a)). Although the Government argues that *Mathews* is inapplicable here because "there is no deprivation of a protected liberty interest," Opp'n at 13, the Court nonetheless applies the *Mathews* due process framework recognized in *Black* and *Velasco Lopez* to Petitioner. "To conclude otherwise would mean that aliens with no legal status residing in the

---

[2] The government also cites the recent decision in *Flores Palma v. Arteta*, No. 25-CV-9340 (JPC), 2026 WL 697015 (S.D.N.Y. Mar. 12, 2026), for further support. *See* Opp'n at 8. Although that case also involved an alien detained under Section 1225(b)(2)(A), that alien did not have LPR status, nor lawful status of any nature. *See Flores Palma*, 2026 WL 697015, at *1-2, 4. Accordingly, the court emphasized the more limited constitutional protections applicable to an alien seeking initial entry as opposed to a person already residing in the United States. *See id.*, at *3-9. An LPR who departed for a two-week vacation stands more akin to the latter than the former for purposes of determining the due process to which they are entitled.

United States would be afforded greater due process rights than individuals with

LPR status who travel abroad." *Brissett*, 324 F. Supp. 3d at 451 (cleaned up).

Accordingly, whether Petitioner is entitled to a bond hearing turns on the

application of the *Mathews* test.

Under the *Mathews* test, three factors bear on the constitutional need for

procedural protections:

> (1) the private interest that will be affected by the official
>     action;
>
> (2) the risk of an erroneous deprivation of such interest
>     through the procedures used, and the probable value,
>     if any, of additional or substitute procedural
>     safeguards; and
>
> (3) the Government's interest, including the function
>     involved and the fiscal and administrative burdens
>     that the additional or substitute procedural
>     requirement would entail.

*Black*, 103 F.4th at 147 (quotation marks omitted) (quoting *Mathews*, 424 U.S. at

335).  The Court considers each factor in turn.

As to the first factor, in Petitioner's case, "the private interest affected by the

official action is the most significant liberty interest there is—the interest in being

free from imprisonment." *Id.* at 151 (citation omitted).  As of late March 2026,

Petitioner has been detained for 11 months without any individualized review. *See*

Pet. at 23.  Such prolonged detention has "seriously infringed" his liberty interest

and "seriously affected" his private interest more generally.  *Black*, 103 F.4th at

151.  Indeed, Petitioner has been separated from his six-year-old son for nearly a

year, and his grandparents—who depend on Petitioner as a caretaker—have

struggled without his regular assistance. Koenig Decl., ¶¶ 37-39. Accordingly, the first *Mathews* factor weighs heavily in favor of Petitioner.

As to the second factor, the current procedures afforded to guard against the erroneous deprivation of Petitioner's liberty interest are virtually nonexistent. Those detained under Section 1225(b)(2)(A) have no statutory right to an individualized bond hearing to test the need for detention. *See Jennings*, 583 U.S. at 297 ("neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). Instead, "[t]he only procedural protection [typically afforded to someone like Petitioner] is DHS's discretion to grant parole to a detainee who has demonstrated a credible fear of persecution." *Rashid v. Trump*, 807 F. Supp. 3d 349, 369 (D. Vt. 2025). While parole alone is inadequate to protect Petitioner's liberty interest for several reasons, *see id.*, the Government contends that even that minimal protection—owing to Petitioner's previous conviction—is largely unavailable (except for witness protection purposes), Opp'n at 15 n.5. Considering the procedures available to Petitioner are essentially nil, then "*any* additional procedural safeguard[] . . . would add value." *Black*, 103 F.4th at 153. The second *Mathews* factor thus weighs heavily in Petitioner's favor, too.

As to the third factor, the Government would not suffer undue fiscal or administrative hardship by providing Petitioner an individualized bond hearing. Further, "retaining and housing [Petitioner] imposes substantial costs as well." *Id.* at 154. Accordingly, the Court "expect[s] that the additional resources that the government will need to expend to justify continued detention at bond hearings will

10

be minimal—and will likely be outweighed by costs saved by reducing unnecessary detention." *Id.* at 154-55. The third *Matthews* factor therefore weighs in favor of Petitioner as well, and so all three *Mathews* factors weigh in favor of granting Petitioner an individualized bond hearing.

The Government does, however, have a legitimate interest in detaining Petitioner if he is a flight risk or a danger to the community. The Court therefore declines to order Petitioner's immediate release, as the bond hearing will best serve to balance both Petitioner's and the Government's interests.

Finally, the Government must provide an individualized bond hearing to Petitioner according to the same requirements articulated in *Black*. *See id.* at 155-59. Indeed, "as the period of confinement grows, so do the required procedural protections." *Velasco Lopez*, 978 F.3d at 853 (cleaned up). Considering Petitioner's 11 months of detention without review, the required procedural protections are substantial. Since requiring Petitioner to prove he is "not a danger and not a flight risk . . . presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged," *Black*, 103 F.4th at 156, the Government must bear the burden of showing at the bond hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a flight risk that cannot be mitigated by reasonable conditions of supervision. Furthermore, the Immigration Judge must also consider Petitioner's "ability to pay and alternatives to detention when setting any bond amount." *Id.* at 158. Otherwise, the risk of erroneous deprivation of Petitioner's liberty is too great. *See id.*

11

**CONCLUSION**

Accordingly, the Petition is **GRANTED IN PART AND DENIED IN PART**.

By **April 8, 2026**, the Government shall provide an individualized bond hearing—

which follows the procedures described by the Second Circuit in *Black v. Decker*, 103

F.4th 133 (2d Cir. 2024)—to Petitioner to determine whether his detention is

justified.  Should it fail to provide such a hearing, the Government shall release

Petitioner from detention.  The Government shall file a letter to update the Court

about Petitioner's status by **April 9, 2026**.  The Clerk of Court is directed to

terminate ECF No. 1.

SO ORDERED.

Dated:  March 25, 2026
        New York, New York

_____
        JEANNETTE A. VARGAS
        United States District Judge